

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA HEWITT,

    Plaintiff,

vs.                        Case No.
                          Hon.

RUTHIE McCRARY, M.D.,
ALLURE MEDICAL SPA, PLLC
A Michigan Corporation,

    Defendants.
_____/
RONALD K. WEINER (P40706)
LIPTON LAW CENTER, P.C.
Attorneys for Plaintiff
18930 W. Ten Mile Road
Southfield, Michigan 48075
(248) 557-1688
ron@liptonlaw.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff VICTORIA HEWITT, by her attorneys LIPTON LAW CENTER, P.C., complains against these Defendants as follows:

## PARTIES AND JURISDICTION

1.    Plaintiff, Victoria Hewitt, is a resident of the City of Chatham, Province of Ontario, Country of Canada.

2. Defendant Ruthie McCrary, M.D. [hereafter "Dr. McCrary"] is a licensed physician in the State of Michigan and at all relevant times to this complaint, was doing business as a specialist in plastic surgery, in the Township of Shelby, County of Macomb, State of Michigan.

3. Defendant Allure Medical Spa, PLLC [hereafter "Allure"], is a Michigan professional limited liability company which at all relevant times, was doing business in the Township of Shelby, County of Macomb, State of Michigan, and has serving as its registered agent, Charles Mok, D.O., 4773 Lockwood, Washington, MI 48094.

4. The subject matter jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

5. A substantial part of the events or omissions giving rise to the plaintiff's claims happened in the Eastern District of Michigan and the Defendants transact business and are subject to personal jurisdiction in this district. Accordingly, venue is proper in this district, pursuant to 28 U.S.C. § 1391.

6. The amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

## INTRODUCTION

7. Victoria Hewitt was seriously and permanently injured on March 4, 2015 when plastic surgeon Ruthie McCrary, M.D. performed a bilateral breast augmentation, during which she injured Hewitt's right brachial plexus. This injury should never occur because it is not in the operative field and demonstrates a complete lack of precision and care necessary for augmentation. Consequently, Victoria Hewitt has permanent neurological injuries affecting her ability to perform vocational and life activities. She will require long-term medical treatment and surgical revision.

## FACTUAL BASIS FOR CLAIM:

8. On January 21, 2015, Victoria Hewitt consulted with Charles Mok, D.O. for breast augmentation. Dr. Mok noted right ptosis of the nipple and gland. Ptosis of the left gland. Mild nipple ptosis and low placed breast mount. Long distance sternal notch nipple. Surgical options were discussed which included a "lollipop procedure" and a lift. Surgery was scheduled for March 4, 2015.

9. On the date of surgery, Dr. Mok issued a report that the patient elected to undergo augmentation without mastopexy and that he advised her that it was better to use the submuscular vs the subglandular approach.

10. In preparation for surgery, Defendant Ruthie McCrary began marking the wrong area. Hewitt questioned her about it and Dr. McCrary stated that the procedure had been changed even though Hewitt had not signed any new documents.

11. According to the operative report, Dr. McCrary performed a bilateral breast augmentation.

12. Immediately after surgery, Hewitt could not feel her right arm. A nurse advised that this was normal.

13. Dr. McCrary did not see or speak with Hewitt following the surgery.

14. On March 5, 2015, Hewitt contacted Defendant Allure Medical Spa (hereinafter "Allure"), complaining of right arm numbness and tingling. She had burning, could not feel her arm, was uncomfortable and could not sleep. She was told that this was normal and to apply Aspercreme and she would be seen at her follow-up appointment.

15. Due to continued severe pain, Hewitt went to the ER at a hospital in Chatham, ON. Testing revealed a blot clot. She was placed on blood thinners and pain medication.

16. On March 10, 2015, Hewitt returned to Defendant Allure for removal of stitches. She reported her symptoms and diagnosis of blood clot. The physician

4

removed the sutures and noted the incisions were healing well and indicated they would follow the DVT to make sure it's resolving.

17. On 4/16/15, Hewitt returned to Allure where an ultrasound was done. This showed a subacute right axillary-brachial DVT.

18. On 5/15/15, Hewitt returned for a 2 month breast augmentation follow-up. She complained of pain in her right arm shooting down to her fingers.

19. On 6/23/15, Hewitt was seen by Dr. Douglas Ross and the St. Joseph Hand and Upper Limb Centre. She reported very little improvement in her symptoms. Her hand was weak and clumsy. She had numbness and paresthesia in her right fingers.

20. Dr. Ross reported, "this young woman has suffered what seems to be a significant injury, which I would place just at the level of the distal end of the medial cord just before it breaks up into the contribution to the median nerve as well as the ulnar nerve. It is principally a C8-T1 deficit but is having significant dysfunction in her hand."

21. On 7/22/15 Hewitt returned to see Dr. Miller. She had a Tinel's sign just distal to the axilla extending down the medial forearm. The shoulder girdle had good range of motion but the hand was markedly atrophic. Her hand intrinsic strength was markedly abnormal with clawing of the fourth and fifth finger. Dr. Miller concluded that Ms. Hewitt had sustained a medial brachial plexus injury.

22. On the same date she also consulted with Dr. Ross who stated that she had a brachial plexus injury which occurred intraoperatively during a transaxillary breast augmentation procedure.

23. Ms. Hewitt was unable to perform all the duties of her occupation as a Nurse as a consequence of the brachial plexus injury caused by Defendants.

24. On 10/8/15, Dr. Miller continued treating Ms. Hewitt for "severe" right brachial plexopathy as a result of a severe right medial cord brachial plexus injury. At this time he recommended considering a nerve transfer and AIN piggyback procedure to augment the hand intrinsic function.

25. On 12/10/15, her neuropathic pain had lessened but her grip strength was still poor. Given her slow but improving condition, surgery was put off while they played a "watchful waiting game."

26. On 3/10/16, Hewitt was managing better with her neuropathic pain but the hand function remained difficult and weak. Dr. Miller supported a return to work but with limitations including restricted hours and restricted duties involving fine motor tasks and gripping/grasping with the right hand.

27. Currently, Hewitt has limited or no feeling in her right 4th and 5th fingers. Her index finger cannot bend fully. Her social and recreational activities are severely limited. While back to work, she is limited to sedentary duties. She has permanent limitations in the performance of fine motor tasks and sustained strength.

28. Further, Hewitt has undergone, and will continue to undergo unnecessary treatment, incurred substantial expenses for her medical care, treatment and services, and endured physical pain and suffering, mental anguish, fright and shock, denial of social pleasures and enjoyments and embarrassment, humiliation and mortification and an impairment of her earning capacity.

29. Victoria Hewitt's injuries and damages, as described here, are a direct and proximate result of Defendant's negligence as hereinafter described.

## COUNT I: MEDICAL MALPRACTICE

30. Defendants, individually and by and through their employees, owed Plaintiff the duty to comply with the applicable standards of practice or care in their care and treatment of Plaintiff and her medical conditions, by acting as would a reasonably prudent plastic surgeon confronted with the same and/or similar circumstances.

31. Further, the applicable standards of practice or care required Dr. McCrary, who held herself out as a plastic surgeon together with her principals and employers, including Allure Medical Spa, PLLC, required Dr. McCrary to:

    a. To exercise that degree of reasonable medical judgment and provide appropriate medical care that a reasonable plastic surgeon would under the same or similar circumstances;

    b. To examine the patient preoperatively;

7

    c.    To continue with the patient's care post-operatively and to be involved in her care until surgical issues were resolved;

    d.    To comply with her ethical obligation to the patient by not relinquishing her responsibility for postoperative surgical care;

    e.    To refrain from causing a brachial plexus injury during breast augmentation, which should never happen in this type of operation;

    f.    To properly place the patient in the appropriate position, for an appropriate amount of time, so as to prevent a brachial plexus injury from occurring;

    g.    To properly place and utilize retractors so as to prevent a brachial plexus injury from occurring;

    h.    To comply with the standard of care in ways not yet known, but which will be ascertained during discovery of this case.

    i.    As a direct and proximate result of the malpractice described, Plaintiff has sustained the injuries and damages alleged.

32.    Dr. McCrary, individually, and as an employee and/or agent, real or ostensible, of Allure Medical Spa, PLLC, breached the applicable standard of care by failing:

    a.    To exercise that degree of reasonable medical judgment and provide appropriate medical care that a reasonable plastic surgeon would under the same or similar circumstances;

    b.    To examine the patient preoperatively;

    c.    To continue with the patient's care post-operatively and to be involved in her care until surgical issues were resolved;

    d.    To comply with her ethical obligation to the patient by not relinquishing her responsibility for postoperative surgical care;

  e.  To refrain from causing a brachial plexus injury during breast augmentation, which should never happen in this type of operation;

  f.  To properly place the patient in the appropriate position, for an appropriate amount of time, so as to prevent a brachial plexus injury from occurring;

  g.  To properly place and utilize retractors so as to prevent a brachial plexus injury from occurring;

  h.  To comply with the standard of care, in ways not yet known, but which will be ascertained during discovery of this case.

33. As a direct and proximate result of these negligent acts and omissions, Victoria Hewitt has suffered severe and permanent brachial plexus injuries. Had Dr. McCrary and Allure Medical Spa, PLLC properly managed and cared for this patient, examined her preoperatively and paid proper attention to the operative field, Dr. McCrary would not have injured the medial cord brachial plexus, a result which should not occur during the procedure at issue.

34. As a further direct and proximate result of Dr. McCrary's negligent acts and omissions, Victoria Hewitt will require future medical and surgical treatment to help alleviate her physical deficits.

35. As a further direct and proximate result of these negligent acts and omissions, Victoria Hewitt has lost earnings and/or earning capacity; she has pain,

suffering, mental anguish, embarrassment, humiliation, denial of social pleasures and enjoyments, disability and any and all damages which the proofs may show.

WHEREFORE, Plaintiff, Victoria Hewitt requests entry of judgment against Defendants, jointly and severally, for all damages to which she is entitled to by virtue of their actions, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with costs, interest and attorney fees so wrongfully sustained.

Respectfully submitted,

LIPTON LAW, P.C.

By /s/ RONALD K. WEINER
RONALD K. WEINER (P40706)
Attorneys for Plaintiff
18930 W, 10 Mile Road
Southfield, Michigan 48075
Dated: March 23, 2017      (248) 557-1688

## **JURY DEMAND**

Plaintiff, Victoria Hewitt, hereby demands trial by jury in the above matter.

Respectfully submitted,

LIPTON LAW, P.C.


By /s/ RONALD K. WEINER
RONALD K. WEINER (P40706)
Attorneys for Plaintiff
18930 W, 10 Mile Road
Southfield, Michigan 48075
Dated:  March 23, 2017          (248) 557-1688