UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA HEWITT,

     Plaintiff,                            Case No. 17-cv-10917
                                                   Hon. Matthew F. Leitman
v.

RUTHIE McCRARY, MD, and
ALLURE MEDICAL SPA, PLLC,

     Defendants.

_____/

## ORDER DENYING DEFENDANT ALLURE MEDICAL SPA, PLLC'S MOTION FOR RECUSAL AND DISQUALIFICATION OF JUDGE (ECF #45)

Defendant Allure Medical Spa, PLLC ("Allure") has filed a Motion for Recusal or Disqualification of Judge (the "Recusal Motion"). (*See* ECF #45.) For the reasons explained below, the motion is **DENIED**.

### I

### A

In this diversity action, Plaintiff Victoria Hewitt alleges that she suffered serious injuries as a result of medical malpractice committed by Defendant Ruthie McCrary, M.D. (*See* Compl., ECF #1.) Hewitt further alleges that at the time of Dr.

McCrary's alleged negligence, Dr. McCrary was an agent or employee of Allure and that Allure is therefore vicariously liable for Dr. McCrary's malpractice.[1] (*See id.*)

## B

In June of 2018, Hewitt settled with Dr. McCrary but not with Allure. On or about June 29, 2018, Hewitt and Dr. McCrary submitted a proposed stipulated order dismissing with prejudice Hewitt's claim against Dr. McCrary. The Court then entered that stipulated order (the "Stipulated Dismissal Order") and dismissed the claim against Dr. McCrary with prejudice. (*See* ECF #28.)

## C

On July 23, 2018, Allure filed a motion for summary judgment. (*See* Mot. for Summ. J., ECF #30.) Allure argued that the dismissal with prejudice of Hewitt's claim against Dr. McCrary compelled the dismissal of Hewitt's vicarious liability claim against Allure. (*See id.*) Allure relied upon the Michigan Supreme Court's decision in *Al-Shimmari v. Detroit Medical Center*, 731 N.W.2d 29, 36-38 (Mich. 2007). In that case, the state court held that an order dismissing a plaintiff's claim

---

[1] Hewitt's Complaint does not use the words "vicarious liability" when setting forth the basis of Allure's alleged liability. But many of the specific allegations of medical malpractice are made against Dr. McCrary, and Hewitt alleges that Dr. McCrary is an employee or agent of Allure. (*See* Compl. at ¶32, ECF #1 at Pg. ID 8-9.) And in response to Allure's motion for summary judgment, Hewitt admitted that the theory asserted against Allure is, at least in part, one of "vicarious liability." (*See* Mot. for Summ. J. at ¶2, ECF #30 at Pg. ID 465 ("Plaintiff alleges that Allure is vicariously liable for the actions of Dr. McCrary"); Resp. to Mot. for Summ. J. at ¶2, ECF #32 at Pg. ID 510 (admitting that contention).)

against an agent *with* prejudice precludes the plaintiff from pursuing a vicarious liability claim against the agent's principal. *See Al-Shimmari*, 731 N.W.2d at 36-38.

## D

On August 20, 2018, Hewitt filed a response to Allure's motion for summary judgment (*See* Resp. to Mot. for Summ. J., ECF #32) and a motion under Rule 60(b)(1) of the Federal Rules of Civil Procedure to set aside the Stipulated Dismissal Order (*see* Mot. for Relief, ECF #33). In Hewitt's response to the motion for summary judgment, she acknowledged that if the Stipulated Dismissal Order remained in place, she could not continue to litigate her vicarious liability claim against Allure. (*See* Resp. to Mot. for Summ. J. at ¶4, ECF #32 at Pg. ID 510.) In the Rule 60(b)(1) motion, Hewitt urged the Court to vacate the Stipulated Dismissal Order. (*See* Mot. for Relief, ECF #33.)

Hewitt argued that she was entitled to relief from the Stipulated Dismissal Order under Rule 60(b)(1) because a "mistake[]" led to the entry of that order. (*See id.* at ¶6, ECF #33 at Pg. ID 531.) Hewitt contended that her attorney made an error when he agreed to dismiss her claim against Dr. McCrary *with* prejudice rather than insisting upon a dismissal *without* prejudice – which would not have barred Hewitt from proceeding against Allure. *See Grimmer v. Lee*, 872 N.W.2d 725, 729 (Mich. Ct. App. 2015) (explaining that "a dismissal without prejudice is not a dismissal on the merits" that precludes "a further action based on the same facts"). Hewitt insisted

that she and her attorney had consistently expressed her desire to continue litigating against Allure after settling with Dr. McCrary and that her attorney never would have agreed to the Stipulated Dismissal Order if he had understood that the entry of that order would extinguish her claim against Allure. (*See* Mot. for Relief, ECF #33 at Pg. ID 540-42.)

As support for Hewitt's claim that her counsel made a mistake in agreeing to the Stipulated Dismissal Order, Hewitt directed the Court to settlement correspondence between her counsel and Dr. McCrary's counsel. In that correspondence, Hewitt's attorney asked Dr. McCrary's attorney if "a covenant not to sue" Dr. McCrary – as opposed to a release of claims against the doctor – would be "acceptable *so that [Hewitt] can continue against Allure*."[2] (Email dated June 4, 2018, ECF #33-4 at Pg. ID 558; emphasis added.)   Dr. McCrary's counsel responded: "yes." (Response email dated June 4, 2018, ECF #33-4 at Pg. ID 557.)

As further support for Hewitt's claim that her attorney erred in approving the Stipulated Dismissal Order, Hewitt attached to her motion the Covenant Not to Sue

---

[2] Under Michigan law, a plaintiff's release of claims against an agent extinguishes any vicarious liability claims that the plaintiff may have against the agent's principal based upon the agent's acts and omissions. *See Theophelis v. Lansing General Hosp.*, 424 N.W.2d 478, 481, 483 (Mich. 1988) (Op. of Griffin, J.); *id.* at 494 (Op. of Boyle, J.)   In contrast, a plaintiff's covenant not to sue an agent does not extinguish the plaintiff's vicarious liability claims against the agent's principal. *See id.* at 492 (Op. of Griffin, J.) (citing *Boucher v. Thomsen*, 43 N.W.2d 866 (Mich. 1950)).

that she executed to resolve her claim against Dr. McCrary. (*See* ECF #33-2.) The Covenant Not to Sue provided that (1) the parties' settlement resolved "only" Hewitt's claim against Dr. McCrary and (2) Hewitt intended to "preserve" her claim against Allure:

> WHEREAS, Victoria Hewitt, and Ruthie McCrary, M.D., only, have reached an amicable compromise of their differences and desire to resolve and put to rest their differences; and
>
> WHEREAS, Victoria Hewitt wishes to reserve all rights, claims, and causes of action she may have against Allure Medical Spa, PLLC, a Michigan corporation, and all agents, and/or employees thereof, including the right to proceed to trial and possible judgment against those individuals and their respective corporations.

(*Id.* at Pg. ID 551.)

Dr. McCrary did not file a response opposing Hewitt's motion to vacate the Stipulated Dismissal Order within the time period allowed under the Court's Local Rules. But the Court did not feel comfortable ruling upon the motion without hearing from Dr. McCrary. Accordingly, the Court ordered Dr. McCrary to file a written response to the motion. (*See* Order, ECF #36.)

In Dr. McCrary's response, she "[a]mit[ted] that Plaintiff intended to continue [her] case against Defendant Allure." (Dr. McCrary's Response, ECF #37 at Pg. ID 608.) She insisted, however, that the entry of the Stipulated Dismissal Order was "not a mistake" because Hewitt's counsel agreed to the entry of the order after

reviewing it. (*Id*.)  She further argued that she would suffer prejudice if the Court vacated the Stipulated Dismissal Order. (*See id*.)

Allure also responded to Hewitt's motion to vacate the Stipulated Dismissal Order. (*See* Allure's Response, ECF #35.)  Allure argued that Hewitt's counsel's stipulation to the entry of the Stipulated Dismissal Order did not rise to the level of a "mistake" justifying relief under Rule 60(b)(1). (*Id.* at 584-86.)  Allure cited a number of Sixth Circuit decisions in support of its position. (*See id*.)

## E

The Court held a hearing on Hewitt's motion to vacate the Stipulated Dismissal Order on October 22, 2018.  During that hearing, the Court asked counsel for Dr. McCrary a lengthy series of questions concerning whether the Stipulated Dismissal Order was consistent with the terms of the settlement between the doctor and Hewitt, and counsel acknowledged at least some inconsistency:

> THE COURT:  You do a reasonably substantial amount of medmal defense, isn't that correct?
>
> MR. WULFMEIER:  I do.
>
> THE COURT:  And it's not unusual, is it, for you to be in cases where you represent a medical professional in a suit where there's claims against your client and against an entity with which your client is affiliated like in this case?
>
> MR. WULFMEIER:  Yes.

THE COURT:  And I have to believe that as somebody experienced in this field, you are aware of the, is it *Al-Shimmari* case from the Michigan Supreme Court?

MR. WULFMEIER:  Yes.

THE COURT:  And you know that what that case says, if a plaintiff dismisses with prejudice a claim against the agent, the claim against the principal is extinguished, right?

MR. WULFMEIER:  Yes.

THE COURT:  All right.  So what I'm struggling with when I think about this from your perspective is, it seems quite clear that Mr. Weiner tells you, my intention is to resolve this in a way that allows me to continue my claim against Allure and he sends that over in an e-mail, and you say that that is -- that's fine with you.  And a covenant not to sue for that reason is okay with you.

That's in the attached e-mails, right?

MR. WULFMEIER:  Yes.

THE COURT:  All right.  So at that point, knowing that Mr. Weiner's intent is to preserve the ability to pursue his claim against Allure, and that you've agreed with that, isn't it a mutual mistake that you -- that this would result here in a dismissal with prejudice?

In other words, with your knowledge of the *Al-Shimmari* case and knowing what Mr. Weiner wants and agreeing to it, how could I find that your sending the dismissal with prejudice over was anything other than kind of a mistake on your end?

MR. WULFMEIER:  Well, it wasn't a mistake, your Honor, and it wasn't a gotcha at all.  It was what I normally do under these circumstances, whether I know of *Al-Shimmari* or not.  It is my habit and custom in cases like this, even with a covenant not to sue, to send over a stipulation and order of dismissal with prejudice.

Clearly, clearly, Mr. Weiner was aware of the fact that this was with prejudice.  I was not trying to trick him.  I was not trying to pull *Al-Shimmari* and say, hey, guess what, I gotcha, and do a favor for Allure.  This is what I normally do.

THE COURT:  But help me understand that.  I'm trying to put myself in Mr. Weiner's shoes, okay?

MR. WULFMEIER:  I understand.

THE COURT:  And you say that's what you normally do and you have a fine reputation in the community, one that I knew before I took the bench and I still know now.

MR. WULFMEIER:  Thank you.

THE COURT: But if I was in Mr. Weiner's shoes and we had just agreed to resolve it with a covenant not to sue for the precise purpose of allowing my client to proceed against Allure, and you sent me this, and I knew of *Al-Shimmari* and I knew that you knew of *Al-Shimmari*, I would call you up and say, hey, Lee, you're better than this.  What in the world are you doing trying to send this over?

You're telling me you're not trying to pull a fast one and I don't disbelieve you but I'm having trouble understanding how, having just agreed to settle on terms that allow him to pursue Allure, you send over a document that blocks him from suing Allure.

MR. WULFMEIER: I don't think it was a mistake and again, I don't think it was a gotcha. I was not trying to do that. I have great respect for Mr. Weiner. I'm not trying to play games with anybody in this situation. Again, this is what I normally do under these circumstances. I was not thinking, oh, there is *Al-Shimmari*, I'm going to send over this stip and order with prejudice and therefore, he won't be able to pursue his claim against Allure.

THE COURT: But how does this even make sense? In other words, you say this is what you normally do. I'm trying to wrap my head around this.

Step one of what you normally do is agree to resolve a case on terms that allow somebody to move ahead with the claim against the principal. And step two is, send them an order that precludes them from doing that. How does that even make sense as a normal course of practice?

MR. WULFMEIER: It probably doesn't make sense in the normal course of practice. What it does is, I agreed to a stip -- or I agreed to the covenant not to sue and it was then my position and what I normally do, is send out -- tell my assistant, we have a case dismissed now, send over a stipulation and order of dismissal with prejudice, which I normally do.

I wasn't thinking, well, I've agreed to this, now I'm going to trick him into that. It's just what I say, your Honor. It's my normal -- what I normally do. I wasn't thinking that, oh, if I send over the stipulation and order of dismissal with prejudice, I'm going to really take his case out of play.

THE COURT: Isn't another way to say this, I also -- that you also weren't intending to get a dismissal with prejudice, right? Because you knew that Mr. Weiner didn't want to give that or you had to assume that. Wouldn't you assume that he knows *Al-Shimmari*, you know *Al-Shimmari*, he just told you he wants to continue.

Isn't the most rational view here of -- that maybe it wasn't a mistake that it went out from your office but it couldn't really have been your intent to get a dismissal with prejudice, right?

MR. WULFMEIER:  Well, it would have been my intent to get that but I understand the Court's position and inquiring as to why that was even sent.  Again, I don't mean to be redundant.  I don't mean to be disrespectful.

What I said and what I mean is that, we had a covenant not to sue that came over.  We signed that.  We agreed to it.  Clearly, he can continue his case against Allure.  By my sending a stip and order of dismissal with prejudice, I was not trying to eliminate his position as it relates to Allure.

\*\*\*

THE COURT:  Did you believe that you had negotiated for your client a dismissal with prejudice?  Did you believe that was implicit in the deal you had made with Mr. Weiner?  Or was that implicitly not part of the deal you had with Mr. Weiner?

MR. WULFMEIER:  Usually -- I don't know if that was agreed to or not agreed to, to be very candid.  Like I say, we agreed to the covenant not to sue.  We agreed to the amount.  I then dictated a stipulation and order of dismissal with prejudice and all of that documentation went forward.  I don't think there was a thought one way or the other, other than the fact that I typically, as I said before, do this for my clients.

THE COURT:  Isn't it fair to say, as Mr. Weiner does, that the agreement that was reached was this -- the claim from Hewitt to McCrary will be settled on terms that allow Hewitt to continue against Allure?

MR. WULFMEIER:  I don't think that's unfair to say that.

THE COURT:  All right.  If that's -- if that was the agreement that was reached between the parties, isn't the entry of the dismissal with prejudice inconsistent with the parties' agreement?

MR. WULFMEIER:  I don't know if it was an agreement between the parties.  I think that was the intent of Mr. Weiner.  I don't know if I agreed that you go forward with this case.  *I presumed that that was what we do in a covenant not to sue, that clearly, he would have the right to continue.  And if that's the case, that would be inconsistent with the stipulation and order of dismissal with prejudice.  I don't disagree with that.*  I think I even indicated that I knew that he was going to continue against Allure.

THE COURT:  Yeah.  Here is -- the exchange was, in an e-mail from Mr. Weiner to you, June 4th of this year, at 2:10 on my record, page I.D. 558.  He writes:

"Lee, not agreeing to accept yet but will a covenant not to sue be acceptable so that my client can continue against Allure?"

And your answer is:  "Yes."

MR. WULFMEIER:  Mm-hmm.

THE COURT:  If I try to make this argument in the strongest terms for Mr. Weiner, the argument goes, the agreement between the parties, between Hewitt and McCrary, was a settlement that allows the claim to go forward.  So the entry of the dismissal with prejudice is inconsistent with the deal the parties reached.

Do you interpret your "yes" e-mail differently?

MR. WULFMEIER:  No, I don't.

THE COURT:  *So you acknowledge the inconsistency between the intent of the parties when the deal was reached and then the entry of the order?*

MR. WULFMEIER:  *Well, it -- I don't disagree with that.  I sort of disagree with the intent of the parties.  I was aware that he wanted to continue with his case against Allure.  The stipulation and order of dismissal, again, with prejudice, was not an attempt at gotcha.  It was what I normally do.  I can see the Court's concern about the inconsistency and I'm not denying it.*

THE COURT:  But I'm saying, even if that's what you normally do, that might be what you -- there is nothing underhanded about saying these two things.  One, at step one, the parties reached an agreement where their shared intent was that the case will be settled on terms that allow the plaintiff's claim to move forward.

Do you agree with step one?

MR. WULFMEIER:  I do.

THE COURT:  And step two, you say, you know what, that may have been the agreement but I'm going to send this order over and see if, notwithstanding what we already did, it's acceptable.  It's not hiding the term "with prejudice."  It's not in Greek.  Here it is.  I'm sending it over.  And he signed it.  It seems to me that may be what happened.

Do you agree with that?

MR. WULFMEIER:  I don't disagree with that.

(Tr. 10/22/18, ECF #50 at 1-8, 12-15, Pg. ID 846-53, 857-60; emphasis added.)

At the conclusion of the hearing, the Court had serious concerns about whether the Stipulated Dismissal Order fairly and accurately reflected the parties' agreement and about whether to leave the order in place. But the Court was not yet convinced that Hewitt had demonstrated a right to relief under Rule 60(b)(1). The Court therefore directed the parties to file supplemental briefs. The Court explained to Hewitt that in order to obtain the relief she requested under Rule 60(b)(1), she would have to cite the strongest federal authority in support of her position. Hewitt filed a supplemental brief on October 29, 2018 (*see* ECF #41), and Allure filed its response to Hewitt's supplemental brief on November 5, 2018 (*see* ECF #42).

After the Court received and reviewed the supplemental briefs, the Court felt the need to conduct its own additional research with respect to Rule 60(b)(1). The Court was seeking a more comprehensive understanding of the background and purpose of the rule as well as additional examples of how federal courts had applied the rule in practice. During this research, the Court learned that Rule 60(b)(1) applies only to final orders and does not cover interlocutory orders like the Stipulated Dismissal Order. *See United States v. Certain Land Situated in City of Detroit, Wayne Cty., Mich.*, 178 F.Supp.2d 792, 799 (E.D. Mich. 2001) ("Hence, [Rule 60(b)] applies only to *final* judgments or orders.") (emphasis in original); *see also United States ex rel. Streck v. Allergan, Inc.*, 288 F.R.D. 88, 91 (E.D. Pa. 2012) (quoting *Sieg v. Sears Roebuck & Co.*, 2012 WL 1657921, at *2 (M.D. Pa. May 11,

2012)) ("In a case with multiple parties and claims, an order that disposes of fewer than all of those claims and parties is not deemed 'final.'").  Whether to set aside an interlocutory order – like the Stipulated Dismissal Order – is governed by Rule 54(b) of the Federal Rules of Civil Procedure.

The Court scheduled a telephonic status conference with counsel to update them on its research and to discuss next steps.

## F

The Court convened the telephonic status with counsel (only) on November 29, 2018.  The Court began by updating counsel on the results of its research and on its preliminary conclusion that "at least as far as I can tell now, Rule 60(b) does not apply to the stipulated order I entered." (Transcript of 11/29/2018 Status Conf. at 5, ECF #44 at Pg. ID 653.)  The Court acknowledged that it had not "heard from the parties on this point" and that it would "give [the parties] a chance to opine on that if [they] want." (*Id*. at 6, Pg. ID 654.)  But the Court told counsel that its "inclination" was to "deny the Rule 60(b)(1) motion because it's the wrong rule and it doesn't apply to the order I entered." (*Id*.)

The Court then told counsel that it had "real concerns about leaving [its] order in place, the dismissal with prejudice." (*Id*.)  The Court said: "I'm concerned that in the big scheme of thing[s], it – it does not ultimately work a just result and on the contrary, I'm concerned that there's a serious case to be made that leaving that order

in place ultimately creates an injustice here." (*Id*.)  The Court then explained that while researching Rule 60(b)(1), it learned "that Rule 54(b) may provide a basis on which to vacate the order that [it] entered and to reenter it as a dismissal without prejudice." (*Id*.)  The Court described Rule 54(b) and cited a Sixth Circuit decision setting forth criteria to apply under the rule. (*See id*. at 6-7, Pg. ID 654-55 (citing *Rodriguez v. Tenn. Laborers Health and Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004))).  The Court then authorized Hewitt to file a motion under Rule 54(b) seeking relief from the Stipulated Dismissal Order. (*See id*. at 7, Pg. ID 655.)

The Court next shared with counsel its *preliminary* view that the appropriate course of action would be to vacate the Stipulated Dismissal Order and replace it with an order of dismissal without prejudice:

> I'm not going to hide the ball here.  My *inclination* is to vacate the order and reenter it as a dismissal with[out] prejudice because I – my *initial inclination* is that that is the – the most just way to proceed.

(*Id*.; emphasis added.)  The Court next told Hewitt's counsel that it was giving him a "real opportunity" to obtain relief from his error and that he should "take advantage of it by filing a substantial brief and motion that cite[s] important and persuasive authorities that would justify setting aside this order." (*Id*.)  The Court told defense counsel that they each would have an opportunity to file a brief responding to and opposing any arguments made by Hewitt's counsel in his anticipated motion. (*See id*.)

At that point, counsel for Allure objected. She found it "unbelievable" that the Court "insert[ed]" itself into the action on behalf of Hewitt and in support of her effort to obtain relief from the dismissal order. (*Id.* at 9-10, Pg. ID 657-58.) Counsel added that, in her view, Hewitt was not entitled to relief. (*Id.* at 11, Pg. ID 659.)

In response, the Court assured Allure's counsel that it had *not* "reached any conclusions" and that Allure would have ample opportunity to make any and all appropriate arguments against Hewitt's request for relief:

> THE COURT:    Listen to me. I'm trying to make this as clear as I can. You are going to have a full written response to his motion in which you will have 25 pages to argue that it's not a manifest injustice and that –
>
> MS. ANDREOU: Okay.
>
> THE COURT:    -- I shouldn't have let him file this motion and any other arguments you want. The purpose of this phone call is just to come up with a path going forward. *You will have ample opportunity to make a written record. I may even hold another hearing. I haven't reached any conclusions.*
>
> We're just going forward and I'm telling you my *inclinations* and how I'm going to proceed. You can say whatever you want in your written response.

(*Id.*; emphasis added.)

## G

On January 2, 2019, Allure filed the Recusal Motion. (*See* ECF #45.) Allure argues that pursuant to 28 U.S.C. § 455(a), the Court must recuse itself from further

proceedings in this action because "a reasonable, objective person, knowing all of the circumstances," would "question[]" the Court's "impartiality." (*Id.* at ¶2, Pg. ID 663 (quoting *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990)).) Allure contends that the Court's "strong opinions in favor of allowing [Hewitt] to amend the stipulated order of dismissal with prejudice, and [its] legal 'counsel' in providing [Hewitt] with a roadmap to achieve this result," evidence a "deep-seated favoritism that makes fair judgment impossible." (*Id.* at ¶14, Pg. ID 667 (quoting *Sammons*, 918 F.2d at 599).) Allure is "most troubl[ed]" by the Court's statement during the telephonic status conference that its "initial inclination" was to vacate the Stipulated Dismissal Order. (*Id.* at 6, Pg. ID 680.) While Allure highlighted the Court's "initial inclination" remark, it did not mention the Court's assurance that it had *not* "reached any conclusions" and that it would give Allure "ample opportunity" – including, possibly, at another hearing – to argue against a request for relief by Hewitt under Rule 54(b). (Transcript of 11/29/2018 Status Conf. at 11, ECF #44 at Pg. ID 659.)

## H

On January 7, 2019, Hewitt filed a motion under Rule 54(b) to strike the order of dismissal with prejudice. (*See* Mot. To Strike, ECF #46.) Hewitt argues that allowing the Stipulated Dismissal Order to stand would result in a manifest injustice and that relief from the order is therefore warranted under Rule 54(b). Hewitt asks the Court to replace the Stipulated Dismissal Order with an order of dismissal

without prejudice.  Allure responded to Hewitt's motion to strike on February 6, 2019. (*See* ECF #49.)  Dr. McCrary has not filed a response opposing Hewitt's request that the Court vacate the Stipulated Dismissal Order.

## II

## A

Allure brings its motion for recusal under 28 U.S.C. § 455(a).  That statute provides that a district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The test for recusal under the statute is an objective one: "a judge must disqualify himself 'where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) (quoting *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013)).

The analysis of a recusal motion starts from the premise that a federal district judge "is presumed to be impartial." *Scott v. Metro. Health Corp*., 234 F. App'x 341, 352 (6th Cir. 2007) (citing *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)).  Thus, "[t]he burden is on the moving party to justify disqualification." *Burley*, 834 F.3d at 616 (citing *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999)).  And the burden is "substantial." *Denton*, 434 F.3d at 1111 (quoting *Fletcher v. Conoco Pipeline Co*., 323 F.3d 661, 664 (8th Cir. 2003)).  Moreover, a party seeking disqualification faces an "uphill battle" where,

as here, the party claims that the bias "ar[o]se during the course of current or prior proceedings." *Burley*, 834 F.3d at 616 (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). Indeed, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of current proceedings, or of prior proceedings, do *not* constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment *impossible*." *Litecky*, 510 U.S. at 555 (emphasis added).

**B**

Allure has failed to carry its burden of showing that recusal is required here. Allure has not cited a single case in which a district court has recused itself, or a circuit court or the Supreme Court has required recusal, under circumstances like those presented here. In fact, in most of the cases that Allure cited in its motion, the courts held that recusal was *not* required.

The only two cases cited by Allure in which recusal was required are easily distinguishable. In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), the Supreme Court held that a district judge should have recused himself from presiding over a bench trial where he served as a trustee of a private university, the university was negotiating with one of the parties to the action concerning a real estate transaction, and the "success and benefit" of the potential transaction to the university depended, at least in part, on the outcome of the litigation. *Id*. at 850.

Likewise, in *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 163 (3rd Cir. 1993), the court held that a district judge should have recused himself from presiding over a bench trial where, among other things, he "tarred" a class of plaintiffs as bad actors "despite an absence of record evidence" and exhibited a "personal interest in the litigation" by filing a letter response to a petition for mandamus even though the Third Circuit had previously discouraged that practice. *Id.* at 164-66. The circumstances in this action bear no resemblance to the circumstances in *Liljeberg* and *Alexander*. Allure likely had difficulty finding analogous authority because, as described below, courts, including the Sixth Circuit, have repeatedly held that recusal is not warranted or required on the main ground urged by Allure.

## C

Allure primarily argues that the Court must recuse itself because it expressed its "inclination" to vacate the Stipulated Dismissal Order during an on-the-record telephone status conference. (Recusal Motion, ECF #45 at Pg. ID 680.) In Allure's words, the Court's statement of its inclination is the "most troubling" aspect of the Court's conduct. (*Id.*) But Allure omits other critical statements by the Court and overstates the significance of the Court's statement of its inclination.

Shortly after expressing its "inclination," the Court assured Allure that it would have a "full opportunity" to persuade the Court not to vacate the Stipulated Dismissal Order and that the Court "*ha[d]n't* reached any conclusions" regarding

whether to vacate that order. (Transcript of 11/29/2018 Status Conf. at 11, ECF #44 at Pg. ID 659; emphasis added.) As noted above, Allure did not mention either of those statements by the Court in its motion papers. In the context of these additional statements by the Court, the Court's expression of its "inclination" – which, by definition, falls far short of a firm conviction – does not reflect that the Court had prejudged Hewitt's right to relief from the dismissal with prejudice. On the contrary, when the Court voiced its "inclination," it was merely expressing a *preliminary* view of the matter – a view that was based upon the prior proceedings before, and the submissions to, the Court. And "[i]t is well-settled that a judge who expresses preliminary views inside the court, based upon knowledge acquired in court proceedings, is *not* recusable." *Goya Foods, Inc. v. Unanue-Casal*, 275 F.3d 124, 130 (1st Cir. 2001) (emphasis in original; citations omitted). "This is so plainly settled that [a] request for recusal" based upon a judge's expression of his initial thoughts may be "frivolous." *Id.*

The First Circuit's decision in *Goya Foods* is instructive. In that case, the district court had entered an order restraining the defendants from transferring certain assets. The plaintiff later presented to the court evidence that the defendants had violated the order, and the court issued an order requiring the defendants to personally appear and show cause why they should not be held in contempt. The defendants did not appear as directed. Instead, two attorneys who had not yet been

formally retained by the defendants appeared and asked for more time to review the file. In response, the court expressed its preliminary view that the defendants had "violated" its earlier order and said that it would take a "preventative measure" to prevent "further flouting" of its orders. That measure was the issuance of bench warrants for the defendants' arrest. The court also permitted the plaintiff to execute against other property held by the defendants. On appeal, the defendants argued that the district judge should have recused because his statements on the record "demonstrate[d] prejudgment of the contempt charge." The First Circuit rejected as "frivolous" the defendants' argument that the district judge was required to recuse based upon his "express[ion] of preliminary views inside the court, based upon knowledge acquired in court proceedings." *Id*.

The Sixth Circuit's decision in *Bell v. Johnson*, 404 F.3d 997 (6th Cir. 2005), likewise provides helpful guidance. The plaintiff in *Bell* initially won a jury verdict of $1,500.00 in compensatory damages and nothing in punitive damages. The district judge thereafter granted the plaintiff's motion for a new trial on damages. At a later off-the-record status conference, the judge said that he "would try the instant case as many times as necessary until the jury reached a verdict of at least $9,000.00," and the judge also told defense counsel that the judge had learned from a law school dean that there was legal authority allowing the judge to award attorneys fees in excess of an apparently-applicable statutory cap. The defendants

moved to disqualify the district judge based upon his statements. The district judge

denied the motion, and the case proceeded to a re-trial at which the jury awarded a

total of $34,000 in damages. On appeal, the Sixth Circuit affirmed the denial of the

recusal motion and stressed that the judge's statements concerning his views of the

case did not warrant recusal:

> An opinion on the merits of the case, resulting from a judge's experience with the case in the course of his or her official duties, is not sufficient to justify §455 recusal unless it demonstrates a deep-seated favoritism or antagonism that would make fair judgment impossible. Such is manifestly not the case here, where the district judge both had substantial experience with the case and expressed an opinion clearly justified by the evidence presented at trial.

*Id*. at 1006.

The Court's statements here that so "troubl[ed]" Allure are much like those in

*Goya Foods* and *Bell*. The statements expressed a *preliminary* opinion – an

"inclination" – that was based upon information contained in filings with the Court

and statements made by counsel on the record during proceedings in open court.

And the Court's concerns about whether the Stipulated Dismissal Order fairly

reflects the parties' agreement were certainly "justified by the evidence presented"

to the Court in the parties' filings and on the record. Indeed, as noted above, Dr.

McCrary's lawyer acknowledged the legitimacy of the Court's concerns. Under

these circumstances, the Court's statement of its inclination – especially when

coupled with the Court's assurance that it had not reached any final decision and that it was giving Allure a "full opportunity" to present its arguments – is not a basis for recusal.

## D

Next, Allure argues that recusal is required because the Court "[1] conducted [its] own independent research to *find* a legal vehicle under which [it] might be able to vacate the stipulated order and [2] invited Plaintiff to file a motion under this specific rule, with instructions on the depth of the motion needed…." (Recusal Motion, ECF #45 at Pg. ID 682; emphasis added.) This argument mischaracterizes the actions taken by the Court and fails to understand that those actions demonstrate that the Court had *not* pre-judged whether to vacate the Stipulated Dismissal Order.

The Court did not attempt to "find" a procedural mechanism through which it could vacate the Stipulated Dismissal Order. On the contrary, as described above, as the Court was conducting research into Rule 60(b)(1) – the rule under which Hewitt originally sought relief from the Stipulated Dismissal Order – the Court found a case explaining that that rule does not apply to interlocutory orders. That case further explained that Rule 54(b) governs whether a district court may modify or vacate such orders (like the Stipulated Dismissal Order). Simply put, the Court learned about the applicability of Rule 54(b) while trying to understand the scope of Rule 60(b)(1), not as part of a concerted effort to find a way to rule for Hewitt. And

the fact that the Court conducted additional legal research in an effort to better understand the issues raised in Hewitt's motion under Rule 60(b)(1) is not evidence of bias (or potential bias). On the contrary, it demonstrates the Court's desire to reach the correct result.

Moreover, the fact that the Court gave Hewitt an opportunity to file a motion for relief under Rule 54(b) and told her that the motion had to be well-supported by federal law confirms that the Court had *not* reached any firm conclusions as to whether to vacate the Stipulated Dismissal Order. Indeed, if, as Allure claims, the Court had already pre-judged the issue, the Court could have and would have exercised its authority – under both its inherent powers and under Rule 54(b) – to vacate *sua sponte* the interlocutory Stipulated Dismissal Order. *See, e.g., Leelenau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945-46 (6th Cir. 2004) (affirming district court's decision to vacate *sua sponte* an interlocutory order).[3] Instead, the Court offered Hewitt a chance to seek relief from the Stipulated Dismissal Order by filing a motion. That course of action ensured that the Court

---

[3] *See also I.H. v. County of Lehigh*, 2007 WL 2781264, at *1 (E.D. Pa., Sept. 24, 2007) ("Although there is no pending motion to reconsider before me, a district court may reconsider its own interlocutory orders *sua sponte*); *Tim Molyneux Prod. v. Platinum Masters Monster Circus*, 2010 WL 4055419, at *7 n.3 (D. Nev., Oct. 5, 2010) (explaining that interlocutory orders are "subject to revision" and "can be modified *sua sponte* or in response to a motion"); *Toll Bros., Inc. v. Essex Ins. Co.*, 2015 WL 1933699, at *6 (E.D. Pa., April 29, 2015) ("Nevertheless, a district court has the authority to revise interlocutory orders *sua sponte*.").

would receive full briefing on *both* sides of the issue before reaching any final decision. And the Court's desire to have a full adversarial presentation of the questions presented under Rule 54(b) demonstrates that the Court had *not* resolved in its own mind whether Hewitt was entitled to relief under the rule.

Finally, the Court's direction to Hewitt's counsel that he file a substantial brief with persuasive federal authority likewise underscores that the Court was not unfairly biased in Hewitt's favor. Indeed, the point of that admonition to counsel was that his client would *not* win unless her position was well-supported by federal law. Simply put, telling a lawyer that he should demonstrate an entitlement to the relief he seeks is not evidence of bias (or potential bias).

For all of the reasons explained above, recusal of the Court is neither required nor appropriate in this action. Therefore, the Recusal Motion (ECF #45) is **DENIED**.

## III

Having denied the Recusal Motion, the Court is now prepared to address the remaining motions: Allure's motion for summary judgment and Hewitt's motion to vacate the Stipulated Dismissal Order under Rule 54(b). Allure recently responded to Hewitt's Rule 54(b) motion. (*See* ECF #49.) Hewitt shall file a reply addressing

Allure's arguments by not later than **February 21, 2019**.  Upon the filing of Hewitt's reply, the Court will review and decide both pending motions.

      **IT IS SO ORDERED.**

                            s/Matthew F. Leitman
                            MATTHEW F. LEITMAN
                            UNITED STATES DISTRICT JUDGE

Dated:  February 7, 2019

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 7, 2019, by electronic means and/or ordinary mail.

                            s/Holly A. Monda
                            Case Manager
                            (810) 341-9764