UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA HEWITT,

     Plaintiff,                    Case No. 17-cv-10917
                                     Hon. Matthew F. Leitman

v.

RUTHIE McCRARY, MD, and
ALLURE MEDICAL SPA, PLLC,

     Defendants.

_____/

**OPINION AND ORDER (1) DENYING DEFENDANT ALLURE MEDICAL SPA, PLLC'S MOTION FOR SUMMARY JUDGMENT (ECF #30), (2) DENYING PLAINTIFF'S MOTION FOR RELIEF UNDER RULE 60(B)(1) (ECF #33), AND (3) GRANTING PLAINTIFF'S MOTION TO REVISE OR STRIKE UNDER RULE 54(B) (ECF #46)**

Plaintiff Victoria Hewitt alleges that Defendant Ruthie McCrary, M.D., committed medical malpractice and that Defendant Allure Medical Spa, PLLC, is vicariously liable for Dr. McCrary's malpractice. After the close of discovery, Hewitt settled with Dr. McCrary, but not with Allure. As part of that resolution, Hewitt and Dr. McCrary agreed that the form of their settlement should *not* bar Hewitt from continuing to pursue her claim against Allure. But when it came time to finalize the settlement paperwork (and without any further negotiations between the parties), Dr. McCrary's attorney had his assistant send Hewitt's lawyer a proposed stipulated order dismissing Hewitt's claim against Dr. McCrary *with*

1

prejudice. This proposed order was fundamentally inconsistent with the parties' settlement agreement because a dismissal *with* prejudice of Hewitt's claim against Dr. McCrary would bar Hewitt from pursuing her vicarious liability claim against Allure. As Dr. McCrary's attorney has candidly acknowledged, it did not make sense for him to send a dismissal order that was contrary to the terms of the parties' settlement. Making matters worse, Hewitt's lawyer mistakenly agreed to the entry of the order of dismissal with prejudice. He did not realize that an order dismissing Hewitt's claim against Dr. McCrary with prejudice would extinguish Hewitt's claim against Allure. Once Hewitt's attorney mistakenly approved the order, it was submitted to the Court, and the Court entered the order dismissing Hewitt's claim against Allure with prejudice (the "Dismissal Order"). All parties agree that if the Dismissal Order stands without modification, then Hewitt cannot pursue her claim against Allure.

Hewitt now seeks relief from the Dismissal Order under Rule 54(b) of the Federal Rules of Civil Procedure. That rule gives district courts broad discretion to revise interlocutory orders (like the Dismissal Order) in order to prevent manifest injustice. Such an injustice would result if the Dismissal Order remains in place and unchanged because the effect of the order is directly contrary to the shared intent of both Hewitt and Dr. McCrary. Hewitt and Dr. McCrary agreed that Hewitt should be permitted to continue prosecuting her claim against Allure, but the Dismissal

2

Order would bar her from doing so.  The order would therefore deprive Hewitt of the opportunity to seek full compensation for her claimed injuries.  To prevent manifest injustice, to fairly achieve the intent of Hewitt and Dr. McCrary, and for the reasons explained below, the Court will **GRANT** Hewitt's Rule 54(b) motion to revise the Dismissal Order by eliminating the dismissal with prejudice and replacing it with a dismissal without prejudice.

As further explained below, the Court will **DENY** Allure's pending motion for summary judgment because the motion was based upon the Dismissal Order terminating Hewitt's claim against Dr. McCrary with prejudice.  The Court will also **DENY** Hewitt's pending motion for relief from the Dismissal Order under Rule 60(b)(1) of the Federal Rules for Civil Procedure – the rule under which Hewitt originally sought relief from the order.  While Hewitt is entitled to relief from the Dismissal Order under Rule 54(b), she is not entitled to relief under Rule 60(b)(1) because that rule only applies to final orders.

## I

### A

In this diversity action, Hewitt alleges that she suffered serious injuries as a result of medical malpractice committed by Dr. McCrary. (*See* Compl., ECF #1.) Hewitt further alleges that at the time of Dr. McCrary's alleged malpractice, Dr.

McCrary was an agent or employee of Allure and that Allure is therefore vicariously liable for Dr. McCrary's alleged malpractice.[1] (*See id.*)

## B

In the Spring of 2018, Hewitt's counsel, Ronald Weiner, and Dr. McCrary's counsel, LeRoy Wulfmeier, began settlement negotiations. (*See* email correspondence, ECF #46-4, Pg. ID 741-44.) They worked to resolve only Hewitt's claim against Dr. McCrary, not Hewitt's vicarious liability claim against Allure. (*See id.*) Allure was, and always has been, represented by separate counsel.

## C

Under Michigan law, the form of any possible settlement between Hewitt and Dr. McCrary was critical to whether, after the settlement, Hewitt could continue to pursue her vicarious liability claim against Allure. Indeed, the relevant rules of Michigan law provided an important context for, and are essential to a proper understanding of, the Weiner-Wulfmeier settlement communications. Therefore, the Court turns now to a brief description of applicable Michigan law before

---

[1] Hewitt's Complaint does not use the words "vicarious liability" when setting forth the basis of Allure's alleged liability. However, many of the specific allegations of medical malpractice are made against Dr. McCrary, and Hewitt alleges that Dr. McCrary is an employee or agent of Allure. (*See* Compl. at ¶32, ECF #1 at Pg. ID 8-9.) Furthermore, in response to Allure's motion for summary judgment, Hewitt admitted that the theory asserted against Allure is, at least in part, one of "vicarious liability." (*See* Mot. for Summ. J. at ¶2, ECF #30 at Pg. ID 465 ("Plaintiff alleges that Allure is vicariously liable for the actions of Dr. McCrary"); Resp. to Mot. for Summ. J. at ¶2, ECF #32 at Pg. ID 510 (admitting that contention).)

proceeding further with its description of the negotiations between Weiner and Wulfmeier.

Michigan has long followed the rule that "a valid release of an agent for tortious conduct operates to bar recovery against the principal on a theory of vicarious liability." *Theophelis v. Lansing General Hosp.*, 424 N.W.2d 478, 481, 483 (Mich. 1988) (Op. of Griffin, J.); *id.* at 494 (Op. of Boyle, J.). Thus, if a plaintiff wishes to settle with an agent-tortfeasor while continuing to pursue a vicarious liability claim against the agent's principal, the plaintiff cannot release the claim against the agent. Instead, the plaintiff should enter into a covenant not to sue the agent-tortfeasor. "[A]t common law, a covenant not to sue given to an agent [does] not discharge his principal." *Id.* at 492 (Op. of Griffin, J.) (citing *Boucher v. Thomsen*, 43 N.W.2d 866 (Mich. 1950)).

Moreover, under Michigan law, a plaintiff may not pursue a vicarious liability claim against a principal if the plaintiff's underlying claim against the principal's agent has been adjudicated on the merits adversely to the plaintiff. *See Al-Shimmari v. Detroit Medical Center*, 731 N.W.2d 29, 36-38 (Mich. 2007). A stipulated order of dismissal with prejudice operates as an adverse adjudication on the merits. *See id.* at 38.[2] Thus, Michigan law prohibits a plaintiff from pursuing a vicarious liability

---

[2] *See also Warfield v. AlliedSignal TBS Holdings, Inc.*, 367 F.3d 538, 542 (6th Cir. 2001) ("A voluntary dismissal with prejudice operates as a final adjudication on the merits and has a *res judicata* effect").

claim against a principal where the plaintiff has stipulated to the dismissal *with* prejudice of his claim against the principal's agent. *See id*. In contrast, a stipulated order dismissing a claim against an agent "without prejudice" is "not an adjudication on the merits" and therefore does "not bar an action against [the agent's] principals." *Grimmer v. Lee*, 872 N.W.2d 725, 729 (Mich. Ct. App. 2015). Accordingly, under Michigan law, a plaintiff who wishes to settle with an agent while still pursuing a vicarious liability claim against a principal must ensure that he dismisses the claim against the agent *without* prejudice.

## D

As Weiner negotiated with Wulfmeier, he sought a settlement of Hewitt's claim against Dr. McCrary that would preserve Hewitt's right to proceed with her vicarious liability claim against Allure. To that end, Weiner asked Wulfmeier if "a covenant not to sue" would be "acceptable so that [Hewitt] can continue against Allure." (Email dated June 4, 2018, ECF #33-4 at Pg. ID 558.) Wulfmeier responded "yes," a covenant not to sue – allowing Hewitt to continue with her claim against Allure – *would* be acceptable. (Response email dated June 4, 2018, ECF #33-4 at Pg. ID 557.) Weiner and Wulfmeier agreed that Weiner would draft the proposed covenant. (*See* emails between counsel dated June 5, 2018, ECF #33-4 at Pg. ID 557.) He did so, and Hewitt eventually signed the Covenant Not to Sue that Weiner had prepared. (*See* Covenant Not to Sue, ECF #33-2 at Pg. ID 551-53.)

The Covenant Not to Sue highlighted that – as Weiner and Wulfmeier had agreed – the settlement (1) resolved "only" Hewitt's claim against Dr. McCrary and (2) "preserve[d]" her claim against Allure:

> WHEREAS, Victoria Hewitt, and Ruthie McCrary, M.D., *only*, have reached an amicable compromise of their differences and desire to resolve and put to rest their differences; and

> WHEREAS, Victoria Hewitt wishes to *reserve all rights, claims, and causes of action she may have against Allure Medical Spa, PLLC*, a Michigan corporation, and all agents, and/or employees thereof, *including the right to proceed to trial and possible judgment against those individuals and their respective corporations.*

(*Id.* at Pg. ID 551; emphasis added.)

Wulfmeier had no objection to the form of the Covenant Not to Sue. In fact, after he received it, he instructed his legal assistant to take the final step in the settlement process: securing Weiner's agreement to the form of an order dismissing Hewitt's claim against Dr. McCrary. (*See* 10/22/2018 Hearing Tr., ECF #50 at Pg. ID 852.) And that is when things went awry.

Wulfmeier had his assistant email Weiner a proposed stipulated order dismissing Hewitt's claim against Dr. McCrary *with* prejudice. Wulfmeier has candidly acknowledged that the proposed dismissal with prejudice was not consistent with the parties' "shared intent" that "the case [would] be settled on terms

that allow[ed Hewitt's] claim [against Allure] to move forward." (*Id.* at Pg. ID 859-60.)

Wulfmeier insists that he was not trying to change the parties' agreement when he had his assistant send Weiner the proposed dismissal with prejudice. Instead, he was merely following his standard practice of transmitting dismissals with prejudice to opposing counsel. (*See id.* at Pg. ID 850.) Notably, Wulfmeier says that he did not intend for the proposed dismissal with prejudice to bar Hewitt from pursuing her claim against Allure. (*See id.* at Pg. ID 851.)

In a colloquy with the Court worth quoting at length, Wulfmeier explained his rationale for sending Weiner the proposed dismissal with prejudice, and he recognized the tension between that resolution of Hewitt's claims against Dr. McCrary and the parties' agreement that Hewitt could continue to pursue her claim against Allure:

> THE COURT: You do a reasonably substantial amount of medmal defense, isn't that correct?
>
> MR. WULFMEIER: I do.
>
> THE COURT: And it's not unusual, is it, for you to be in cases where you represent a medical professional in a suit where there's claims against your client and against an entity with which your client is affiliated like in this case?
>
> MR. WULFMEIER: Yes.

THE COURT:  And I have to believe that as somebody experienced in this field, you are aware of the, is it *Al-Shimmari* case from the Michigan Supreme Court?

MR. WULFMEIER:  Yes.

THE COURT:  And you know that what that case says, if a plaintiff dismisses with prejudice a claim against the agent, the claim against the principal is extinguished, right?

MR. WULFMEIER:  Yes.

THE COURT:  All right.  So what I'm struggling with when I think about this from your perspective is, it seems quite clear that Mr. Weiner tells you, my intention is to resolve this in a way that allows me to continue my claim against Allure and he sends that over in an e-mail, and you say that that is -- that's fine with you.  And a covenant not to sue for that reason is okay with you.

That's in the attached e-mails, right?

MR. WULFMEIER:  Yes.

THE COURT:  All right.  So at that point, knowing that Mr. Weiner's intent is to preserve the ability to pursue his claim against Allure, and that you've agreed with that, isn't it a mutual mistake that you -- that this would result here in a dismissal with prejudice?

In other words, with your knowledge of the *Al-Shimmari* case and knowing what Mr. Weiner wants and agreeing to it, how could I find that your sending the dismissal with prejudice over was anything other than kind of a mistake on your end?

MR. WULFMEIER:  Well, it wasn't a mistake, your Honor, and it wasn't a gotcha at all.  It was what I normally do under these circumstances, whether I know of *Al-Shimmari* or not. It is my habit and custom in cases like this, even with a covenant not to sue, to send over a stipulation and order of dismissal with prejudice.

Clearly, clearly, Mr. Weiner was aware of the fact that this was with prejudice.  I was not trying to trick him.  I was not trying to pull *Al-Shimmari* and say, hey, guess what, I gotcha, and do a favor for Allure.  This is what I normally do.

THE COURT:  But help me understand that.  I'm trying to put myself in Mr. Weiner's shoes, okay?

MR. WULFMEIER:  I understand.

THE COURT:  And you say that's what you normally do and you have a fine reputation in the community, one that I knew before I took the bench and I still know now.

MR. WULFMEIER:  Thank you.

THE COURT: But if I was in Mr. Weiner's shoes and we had just agreed to resolve it with a covenant not to sue for the precise purpose of allowing my client to proceed against Allure, and you sent me this, and I knew of *Al-Shimmari* and I knew that you knew of *Al-Shimmari*, I would call you up and say, hey, Lee, you're better than this.  What in the world are you doing trying to send this over?

You're telling me you're not trying to pull a fast one and I don't disbelieve you but I'm having trouble understanding how, having just agreed to settle on terms that allow him to pursue Allure, you send over a document that blocks him from suing Allure.

MR. WULFMEIER: I don't think it was a mistake and again, I don't think it was a gotcha. I was not trying to do that. I have great respect for Mr. Weiner. I'm not trying to play games with anybody in this situation. Again, this is what I normally do under these circumstances. I was not thinking, oh, there is *Al-Shimmari*, I'm going to send over this stip and order with prejudice and therefore, he won't be able to pursue his claim against Allure.

THE COURT: But how does this even make sense? In other words, you say this is what you normally do. I'm trying to wrap my head around this.

Step one of what you normally do is agree to resolve a case on terms that allow somebody to move ahead with the claim against the principal. And step two is, send them an order that precludes them from doing that. How does that even make sense as a normal course of practice?

MR. WULFMEIER: *It probably doesn't make sense in the normal course of practice.* What it does is, I agreed to a stip -- or I agreed to the covenant not to sue and it was then my position and what I normally do, is send out -- tell my assistant, we have a case dismissed now, send over a stipulation and order of dismissal with prejudice, which I normally do.

I wasn't thinking, well, I've agreed to this, now I'm going to trick him into that. It's just what I say, your Honor. It's my normal -- what I normally do. I wasn't thinking that, oh, if I send over the stipulation and order of dismissal with prejudice, I'm going to really take his case out of play.

THE COURT: Isn't another way to say this, I also -- that you also weren't intending to get a dismissal with prejudice, right? Because you knew that Mr. Weiner didn't want to give that or you had to assume that. Wouldn't you assume that he knows *Al-Shimmari*, you know *Al-Shimmari*, he just told you he wants to continue.

Isn't the most rational view here of -- that maybe it wasn't a mistake that it went out from your office but it couldn't really have been your intent to get a dismissal with prejudice, right?

MR. WULFMEIER: Well, it would have been my intent to get that but I understand the Court's position and inquiring as to why that was even sent. Again, I don't mean to be redundant. I don't mean to be disrespectful.

What I said and what I mean is that, we had a covenant not to sue that came over. We signed that. We agreed to it. Clearly, he can continue his case against Allure. *By my sending a stip and order of dismissal with prejudice, I was not trying to eliminate his position as it relates to Allure.*

\*\*\*

THE COURT: Did you believe that you had negotiated for your client a dismissal with prejudice? Did you believe that was implicit in the deal you had made with Mr. Weiner? Or was that implicitly not part of the deal you had with Mr. Weiner?

MR. WULFMEIER: Usually -- I don't know if that was agreed to or not agreed to, to be very candid. Like I say, we agreed to the covenant not to sue. We agreed to the amount. I then dictated a stipulation and order of dismissal with prejudice and all of that documentation went forward. I don't think there was a thought one way or the other, other than the fact that I typically, as I said before, do this for my clients.

THE COURT: *Isn't it fair to say, as Mr. Weiner does, that the agreement that was reached was this -- the claim from Hewitt to McCrary will be settled on terms that allow Hewitt to continue against Allure?*

MR. WULFMEIER: *I don't think that's unfair to say that.*

THE COURT:  All right.  If that's -- if that was the agreement that was reached between the parties, isn't the entry of the dismissal with prejudice inconsistent with the parties' agreement?

MR. WULFMEIER:  I don't know if it was an agreement between the parties.  I think that was the intent of Mr. Weiner.  I don't know if I agreed that you go forward with this case.  *I presumed that that was what we do in a covenant not to sue, that clearly, he would have the right to continue.  And if that's the case, that would be inconsistent with the stipulation and order of dismissal with prejudice.  I don't disagree with that.*  I think I even indicated that I knew that he was going to continue against Allure.

THE COURT:  Yeah.  Here is -- the exchange was, in an e-mail from Mr. Weiner to you, June 4th of this year, at 2:10 on my record, page I.D. 558.  He writes:

"Lee, not agreeing to accept yet but will a covenant not to sue be acceptable so that my client can continue against Allure?"

And your answer is:  "Yes."

MR. WULFMEIER:  Mm-hmm.

THE COURT:  If I try to make this argument in the strongest terms for Mr. Weiner, the argument goes, the agreement between the parties, between Hewitt and McCrary, was a settlement that allows the claim to go forward.  So the entry of the dismissal with prejudice is inconsistent with the deal the parties reached.

Do you interpret your "yes" e-mail differently?

MR. WULFMEIER:  No, I don't.

13

THE COURT:  *So you acknowledge the inconsistency between the intent of the parties when the deal was reached and then the entry of the order?*

MR. WULFMEIER:  *Well, it -- I don't disagree with that.  I sort of disagree with the intent of the parties.  I was aware that he wanted to continue with his case against Allure.  The stipulation and order of dismissal, again, with prejudice, was not an attempt at gotcha.  It was what I normally do.  I can see the Court's concern about the inconsistency and I'm not denying it.*

THE COURT:  But I'm saying, even if that's what you normally do, that might be what you -- there is nothing underhanded about saying these two things.  *One, at step one, the parties reached an agreement where their shared intent was that the case will be settled on terms that allow the plaintiff's claim to move forward.*

*Do you agree with step one*?

MR. WULFMEIER:  *I do*.

THE COURT:  And step two, you say, you know what, that may have been the agreement but I'm going to send this order over and see if, notwithstanding what we already did, it's acceptable.  It's not hiding the term "with prejudice."  It's not in Greek.  Here it is.  I'm sending it over.  And he signed it.  It seems to me that may be what happened.

Do you agree with that?

MR. WULFMEIER:  I don't disagree with that.

(*Id.* at Pg. ID 846-53, 857-60; emphasis added.)

**E**

When Weiner received the proposed order of dismissal with prejudice from Wulfmeier's assistant, he reviewed it. He saw that it provided for a dismissal *with* prejudice. However, he did not realize (or perhaps had forgotten) that under Michigan law such a dismissal would bar Hewitt from continuing to prosecute her vicarious liability claim against Allure. Weiner approved the order under the mistaken impression that it preserved his client's claim against Allure. He authorized Wulfmeier's assistant to note his consent to the stipulation and to present the proposed stipulated order of dismissal with prejudice to the Court for entry. (*See* email dated June 25, 2018, ECF #37-2 at Pg. ID 616.)

On June 29, 2018, Wulfmeier's assistant submitted the proposed order to the Court. The Court signed and entered the order the same day. (*See* Dismissal Order, ECF #28.) The Dismissal Order dismissed Hewitt's claim against Dr. McCrary *with* prejudice. (*See id.*)

**F**

On July 23, 2018, Allure filed a motion for summary judgment. (*See* Mot. for Summ. J., ECF #30.) Allure argued that, under *Al-Shimmari, supra*, the Dismissal Order, which resulted in the dismissal with prejudice of Hewitt's claim against Dr. McCrary, compelled the dismissal of Hewitt's vicarious liability claim against Allure. (*See id*.)

On August 20, 2018, Hewitt filed a response to Allure's motion for summary judgment (*see* Resp. to Mot. for Summ. J., ECF #32) and a motion to set aside the Dismissal Order under Rule 60(b)(1) of the Federal Rules of Civil Procedure (the "Rule 60(b)(1) Motion") (*see* Rule 60(b)(1) Motion, ECF #33). In Hewitt's response to the motion for summary judgment, she acknowledged that if the Dismissal Order remained in place, she could not continue to litigate her vicarious liability claim against Allure. (*See* Resp. to Mot. for Summ. J. at ¶4, ECF #32 at Pg. ID 510.) In the Rule 60(b)(1) Motion, Hewitt urged the Court to vacate the Dismissal Order. (*See* Rule 60(b)(1) Motion, ECF #33.)

Hewitt argued that she was entitled to relief from the Dismissal Order under Rule 60(b)(1) because a "mistake[]" led to the entry of that order. (*Id.* at ¶6, ECF #33 at Pg. ID 531.) Hewitt contended that Weiner made an error when he agreed to dismiss her claim against Dr. McCrary *with* prejudice rather than demanding upon a dismissal *without* prejudice. Hewitt insisted that she and Weiner had consistently expressed her desire to continue litigating against Allure after settling with Dr. McCrary and that Weiner never would have agreed to the Dismissal Order if he had understood that the entry of that order would extinguish her claim against Allure. (*See id.* at Pg. ID 540-42.)

Dr. McCrary did not file a response opposing Hewitt's Rule 60(b)(1) Motion within the time period allowed under the Court's Local Rules. But the Court did not

feel comfortable ruling upon that motion without hearing from Dr. McCrary. Accordingly, the Court ordered Dr. McCrary to file a written response to the motion. (*See* Order, ECF #36.)

In Dr. McCrary's response, she "[a]mit[ted] that [Hewitt] intended to continue [her] case against Defendant Allure." (Dr. McCrary's Resp., ECF #37 at Pg. ID 608.) She insisted, however, that the entry of the Dismissal Order was "not a mistake" because Weiner agreed to the entry of the order after reviewing it. (*Id*.) Dr. McCrary further argued that she would suffer prejudice if the Court vacated the Dismissal Order. (*See id*.)

Allure also responded to Hewitt's Rule 60(b)(1) Motion. (*See* Allure's Resp. to Rule 60(b)(1) Motion, ECF #35.) Allure argued that Weiner's stipulation to the entry of the Dismissal Order did not rise to the level of a "mistake" justifying relief under Rule 60(b)(1). (*See id*. at 584-86.) Allure cited a number of Sixth Circuit decisions in support of that position. (*See id*.)

### G

On October 22, 2018, the Court held a hearing on Hewitt's Rule 60(b)(1) Motion. At the conclusion of the hearing, the Court had serious concerns about whether the Dismissal Order fairly and accurately reflected the parties' agreement and about whether to leave the order in place. But the Court was not yet convinced that Hewitt had demonstrated a right to relief under Rule 60(b)(1). The Court

therefore directed the parties to file supplemental briefs. Hewitt filed a supplemental brief on October 29, 2018 (*see* ECF #41), and Allure filed its response to Hewitt's supplemental brief on November 5, 2018 (*see* ECF #42).

After the Court received and reviewed the supplemental briefs, the Court felt the need to conduct its own additional research with respect to Rule 60(b)(1). The Court sought a more comprehensive understanding of the background and purpose of the rule as well as additional examples of how federal courts had applied the rule in practice. During this research, the Court learned, as described below, that Rule 60(b)(1) applies only to final orders and does not cover interlocutory orders like the Dismissal Order. The Court also learned that Rule 54(b) of the Federal Rules of Civil Procedure governs whether to set aside an interlocutory order like the Dismissal Order. The Court authorized Hewitt to file a motion seeking relief from the Dismissal Order under Rule 54(b). (*See* 11/29/2018 Status Conference Tr., ECF #44 at Pg. ID 655.)

## H

On January 7, 2019, Hewitt filed a motion under Rule 54(b) to revise or strike the Dismissal Order (the "Rule 54(b) Motion"). (*See* Rule 54(b) Motion, ECF #46.) Hewitt argued that allowing the dismissal with prejudice to stand would result in a manifest injustice and that relief from the Dismissal Order was therefore warranted under Rule 54(b). (*See id.*) Hewitt asked the Court to "revise the [Dismissal] Order

(Docket #28) to be 'without prejudice' or to strike the Order entirely so that [Hewitt] and McCrary can execute a new, correct order." (*Id.* at Pg. ID 709.) On February 6, 2019, Allure filed a response opposing Hewitt's motion. (*See* Allure Resp. to Rule 54(b) Motion, ECF #49.) Hewitt filed a reply in further support of her motion on February 21, 2019. (*See* Hewitt Reply Br., ECF #53.) Notably, Dr. McCrary did not file anything in opposition to Hewitt's Rule 54(b) Motion.

The Court held a hearing on Hewitt's Rule 54(b) Motion on March 12, 2019. Counsel for Dr. McCrary did not attend the hearing.

## II

The Court first addresses Hewitt's Rule 60(b)(1) Motion. In relevant part, Rule 60(b)(1) provides: "(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect…." Fed. R. Civ. P. 60(b)(1). Hewitt argues that the Court should vacate the Dismissal Order under Rule 60(b)(1) because the order was entered by "mistake." (*See* Rule 60(b)(1) Motion at ¶13, ECF #33 at Pg. ID 532.)

Rule 60(b)(1) does not apply to the Dismissal Order. The rule applies only to final orders. *See United States v. Certain Land Situated in City of Detroit, Wayne Cty., Mich.*, 178 F. Supp. 2d 792, 799 (E.D. Mich. 2001). The Dismissal Order is

an interlocutory order, not a final order, because this action involves multiple defendants, and the order did not dispose of all of the claims against all of the defendants. *See United States ex rel. Streck v. Allergan, Inc.*, 288 F.R.D. 88, 91 (E.D. Pa. 2012) (quoting *Sieg v. Sears Roebuck & Co.*, 2012 WL 1657921, at *2 (M.D. Pa. May 11, 2012)) ("In a case with multiple parties and claims, an order that disposes of fewer than all of those claims and parties is not deemed 'final.'"). Because Rule 60(b)(1) does not apply to the Dismissal Order, Hewitt is not entitled to relief under that rule. Therefore, Hewitt's Rule 60(b)(1) Motion (ECF #33) is **DENIED**.

## III

The Court now turns to Hewitt's Rule 54(b) Motion.

## A

Rule 54(b) authorizes district courts to direct entry of judgment on fewer than all of the claims in an action and to revise interlocutory orders prior to the entry of final judgment. The rule provides:

> (b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not

> end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 56(b)

"District courts have authority under both [federal] common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). "This authority allows district courts 'to afford such relief from [interlocutory orders] as justice requires.'" *Id.* (quoting *Citibank N.A. v. Fed. Deposit Ins. Corp.*, 857 F. Supp. 976, 981 (D.D.C. 1994)). Justice may "require" relief under Rule 54(b) where "some sort of 'injustice' will result if reconsideration is refused" – where "some harm, legal or at least tangible, would flow from a denial of reconsideration." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez,* 89 F. App'x at 959. "This standard obviously vests *significant discretion* in district courts." *Id.* at 959 n.7 (emphasis added).

**B**

Justice requires the Court to revise the Dismissal Order to reflect a dismissal *without* prejudice because the effect of a dismissal *with* prejudice is fundamentally inconsistent with the terms of the settlement that the order was intended to effectuate. As explained in detail above, Wulfmeier (on behalf of Dr. McCrary) *accepted* the settlement proposal by Weiner (on behalf of Hewitt) that Hewitt and Dr. McCrary resolve their dispute on terms that would allow Hewitt to *continue* pursuing her vicarious liability claims against Allure. And, as Wulfmeier acknowledged, when the parties reached their settlement agreement, they had a "shared intent" that Hewitt move forward against Allure. (10/22/2018 Hearing Tr., ECF #50 at Pg. ID 859-60.) But the Dismissal Order – as an adverse adjudication on the merits of Hewitt's claim against Dr. McCrary – bars Hewitt from doing so. *See Al-Shimmari, supra*. Thus, the Dismissal Order frustrates the agreement reached by the parties and prevents Hewitt from seeking a full recovery for her alleged injuries. Adhering to the order under these circumstances would perpetuate a serious injustice.

Revising the Dismissal Order would not deprive Dr. McCrary of a benefit for which she negotiated. Indeed, Dr. McCrary did not negotiate for a dismissal with prejudice. On the contrary, she agreed (through Wulfmeier) to settle on terms that were inconsistent with a dismissal with prejudice – because those terms allowed Hewitt to continue litigating against Allure. And Wulfmeier did not propose a

22

dismissal with prejudice during his negotiations with Weiner. Rather, he had his assistant email Weiner a proposed order that included a dismissal with prejudice after the two lawyers had already concluded their substantive negotiations. Moreover, as noted above, Dr. McCrary has not opposed Hewitt's request for relief under Rule 54(b), and her lack of opposition supports the conclusion that she would not be unfairly deprived of a benefit for which she negotiated if the Court were to grant Hewitt her requested relief. For all of these reasons, the Court concludes that revising the Dismissal Order would not be unfair to Dr. McCrary.

Likewise, revising the Dismissal Order would not be unfair to Allure. Allure did not negotiate for entry of that order. Nor did it give anything up in exchange for the order or rely to its detriment upon the entry of the order. Thus, revising the Dismissal Order to make it a dismissal without prejudice would not unjustly prejudice Allure. In contrast, leaving the order as a dismissal with prejudice would result in an undeserved windfall for Allure: as a result of an error by Weiner, Allure would escape potential liability without having to litigate the merits to a conclusion.

Under all of these circumstances, the only way to avoid a manifest injustice is to revise the Dismissal Order to make the dismissal without prejudice – and to thereby implement the settlement upon which Hewitt and Dr. McCrary agreed.

## C

It is, of course, true that a serious error by Weiner – agreeing to entry of the Dismissal Order without appreciating its effect – contributed in large measure to the injustice that Hewitt seeks to avoid. But for two reasons, the Court is not persuaded that Weiner's fault should preclude relief under Rule 54(b).

First, the Court believes that Wulfmeier contributed, at least to some extent, to the confusion that led to the entry of the Dismissal Order. Wulfmeier agreed to a settlement framework that would allow Hewitt to continue prosecuting her claims against Allure. Then, without any further negotiations or discussions between himself and Weiner, Wulfmeier had his assistant email Weiner an order of dismissal with prejudice that barred her from continuing against Allure. That course of action is perplexing. Indeed, Wulfmeier acknowledged that "it probably [didn't] make sense in the normal course of practice" to have his assistant send Weiner an order that was inconsistent with the terms to which the parties had agreed. (10/22/2018 Hearing Tr., ECF #50 at Pg. ID 852.) That Wulfmeier contributed, at least in some measure, to the confusion that led to the erroneous entry of the Dismissal Order weighs in favor of revising that order. (To be crystal clear, the Court is *not* suggesting that Wulfmeier, a well-respected attorney, intentionally attempted to mislead Weiner nor that Wulfmeier engaged in any sort of "sharp dealing." The Court is merely pointing out that Wulfmeier's conduct was somewhat confusing and contributed, at

least in some measure, to the entry of a dismissal with prejudice that did not reflect the parties' agreement.)

Second, under the circumstances of this case, it would be manifestly unjust to deprive Hewitt of her right to pursue her claim against Allure based upon Weiner's failure to appreciate the significance of a dismissal with prejudice. Weiner repeatedly expressed Hewitt's intention to settle on terms that permitted Hewitt to continuing litigating against Allure, *and he secured Wulfmeier's agreement to those terms*. Weiner simply failed to execute correctly the final step of the agreed-upon settlement framework. And Hewitt stands to lose a potentially-valuable claim because Weiner – after doing everything right to structure the settlement – made one serious oversight error in the last step of the process. Under these circumstances, it would be manifestly unjust to leave the Dismissal Order intact and to thereby preclude Hewitt from pursing her claim against Allure. To avoid manifest injustice and to achieve the true intent of the parties, the Court must revise the Dismissal Order to provide that the dismissal is without prejudice.

The United States District Court for the District of Hawaii revised a stipulation and order for dismissal under similar circumstances in *Park v. Transamerica Ins. Co.*, 917 F. Supp. 731 (D. Haw. 1996). *Park* was the second lawsuit between spouses Jerry and Myong Park and Transamerica Insurance Company. The first lawsuit was a declaratory judgment action that Transamerica filed against the Parks.

25

The parties concluded the first lawsuit by presenting to the district court a Stipulation for Dismissal Without Prejudice and Order. As relevant here, the stipulation provided that each party would bear its own attorneys' fees and costs. After the district court approved the stipulation and entered the order dismissing the first action, the Parks demanded that Transamerica pay their legal fees. Transamerica refused, citing the agreement in the stipulation that each side would pay its own attorneys' fees. In the second lawsuit, the Parks sought to recover from Transamerica their attorneys' fees from the first lawsuit. Transamerica moved for summary judgment based upon the agreement in the stipulation. The Parks countered that the court should vacate the stipulation. They argued that enforcing the stipulation would result in a "manifest injustice" because the parties had not specifically discussed the fee provision when negotiating the dismissal order and because their counsel "'inadvertently overlooked' the fee provision when she signed the stipulation." *Id*. at 734. The court agreed with the Parks and vacated the portion of the stipulation concerning the payment of attorneys' fees.

The court explained that enforcing the stipulation for dismissal would be manifestly unjust because it did not conform to the parties' intent:

> Here, Plaintiffs persuasively argue that enforcement of the stipulation entered into by the parties would be manifestly unjust because it was never the Plaintiffs' intention to waive their right to recover attorneys' fees and costs; rather, their intent was to: (1) maintain status quo with respect to their claims by staying the action, and (2)

attempt to comply with the court's request to file a stipulation to dismiss. Plaintiffs point to the fact that the parties had initially decided to "stay" the declaratory action in this court pending the final resolution of the underlying action—notably, without any mention of attorneys' fees—but that the parties stipulated to dismiss the case without prejudice in its stead. *See* Plaintiffs' Counterstatement of Facts, Exhibits 1–4.

\*\*\*

There were no discussions whatsoever between the parties concerning their respective rights, if any, to recover their attorneys' fees or costs and at no time did Transamerica propose that any such provision be included in the Stipulation to Stay." *See* Plaintiffs' Counterstatement of Facts, at 3–4; Declaration of Robyn B. Chun, at ¶¶ 8, 9. At the hearing on this motion, Transamerica's counsel conceded that no discussions concerning attorneys' fees had taken place during either the negotiations surrounding the stipulated stay or during the talks surrounding the stipulated dismissal. Transamerica described the attorneys' fees provision as "boilerplate" and explained that the provision may have inadvertently been included in the stipulated dismissal.

In our judicial system, stipulations fairly entered into are favored. *See T I Fed. Credit Union v. Delbonis,* 72 F.3d 921, 928 (1st Cir.1995) (citations omitted). Moreover, litigation stipulations "can be understood as the analogue of terms binding parties to a contract." *Id.* at 928. Accordingly, stipulations should be upheld by a court absent manifest injustice to the parties. *See Gakiya,* 68 Haw. at 555, 722 P.2d 460; *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1373 (7th Cir.1992).[4] Although the general rule of contract law is that one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained, *see Leong v. Kaiser Foundation Hosp.,* 71 Haw. 240, 245, 788 P.2d 164 (1990), this court concludes that manifest injustice would

result to the Plaintiffs if this court were to fully enforce the stipulation.

Although counsel for Plaintiffs was arguably negligent in signing the dismissal without first carefully reviewing its terms and conditions, this court will not permit Transamerica to benefit from such a mistake here; indeed, such a benefit would amount to a "windfall" for Transamerica. By Transamerica's own admission, the provision that each party would bear its attorneys' fees was not discussed or even contemplated by the parties in agreeing to hold the case in status quo. The original intent of the parties was to allow the case to proceed in state court and then, thereafter, revive the claims filed in federal court if appropriate; their original intent, therefore, is best served by vacating the stipulation that each party bear its own attorneys' fees and costs. *See Compania Trasatlantica,* 950 F.2d at 107. Moreover, when the Plaintiffs agreed to the dismissal without prejudice, they aided the effective functioning of this court by agreeing to pursue their related federal claims in the pending state proceeding, a practice that this court does not wish to discourage. *See id.*

In light of the unique set of facts presented here, and the instructive case law set forth above, this court believes that it would be "manifestly unjust" to enforce the terms of the stipulated dismissal and to grant the Defendant's motion for summary judgment.

*Id.* at 735–36.

While the court in *Park* believed that the facts there were "unique," there are many significant similarities between the entry of the stipulation in *Park* and the entry of the Dismissal Order in this case. Here, as in *Park*, (1) the parties did not discuss the challenged portion of the Dismissal Order – the "with prejudice"

provision – during settlement negotiations; (2) Hewitt's counsel stipulated to the entry of the Dismissal Order as a result of an oversight as to the effect of the "with prejudice" language; (3) the Dismissal Order does not accurately capture the parties' "shared intent" that Hewitt be permitted to continue pursuing her claim against Allure; and (4) leaving the Dismissal Order in place would result in an undeserved windfall for Allure. As *Park* teaches, under these circumstances, it would be manifestly unjust to leave the Dismissal Order intact even though it was entered pursuant to a stipulation.[3] *See also Compania Trasatlantica Espanola, S.A. v. Hartford Accident & Indem. Co.*, 950 F.2d 105 (2d Cir. 1991) (holding that it would be manifestly unjust to enforce a stipulation for dismissal of appeal where actual intent of parties was solely to delay the appeal). Indeed, "[t]here is no justice binding a party to an inadvertent stipulation which may be in error." *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 599 F. Supp. 21, 23 (M.D. La. 1984).

---

[3] There is one difference between this case and *Park*. Here, Wulfmeier intentionally inserted the "with prejudice" language in the Dismissal Order before directing his assistant to send it to Weiner. In contrast, the attorney fee language in *Park* was inadvertently added to the stipulation in that case. But this difference does not make *Park* any less instructive. As explained above, Wulfmeier's unilateral decision to add the "with prejudice" language contributed, at least to some degree, to the conflict between the Dismissal Order and the parties' settlement, and thus the case for revising the Dismissal Order here is no less compelling than it was in *Park*.

**D**

Allure offers several arguments as to why Hewitt is not entitled to relief under Rule 54(b). Allure's arguments are serious ones, but they ultimately fail to persuade the Court to deny Hewitt relief.

**1**

Allure first argues that Rule 54(b) does not permit the Court to revise an order entered pursuant to a stipulation of the parties. Allure contends that the rule applies only to "interlocutory order[s] entered after a decision *by the court*." (Allure Resp. to Rule 54(b) Motion, ECF #49 at Pg. ID 812; emphasis in original.) The plain language of the rule belies this argument. The rule authorizes a district court to revise "*any* order or other decision, *however designated*, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties…." Fed. R. Civ. P. 54(b) (emphasis added).

Allure has not directed the Court to any decision in which any federal court has held, as Allure urges, that Rule 54(b) does not apply to orders entered through stipulations. Allure cites *Hollis v. Dump Cable, Inc.*, 2014 WL 1256725 (W.D. Tenn. Aug. 12, 2014), for the proposition that the rule "requires a 'legal error' that the Court itself committed in rendering a prior decision." (Allure Resp. to Rule 54(b) Motion, ECF #49 at Pg. ID 813.) But in the relevant portion of *Hollis*, the court held only that where a party seeks relief under Rule 54(b) based upon "clear error," the

party must identify an erroneous legal ruling by the court. *Hollis*, 2014 WL 1256725, at \*2. The court in *Hollis* did not hold, and this Court is not persuaded, that a party must identify an erroneous legal ruling by a court when the party, like Hewitt here, seeks relief under Rule 54(b) on the basis that an order has caused a manifest injustice.[4]

Moreover, Allure has not sufficiently explained why the fact that the Dismissal Order was entered pursuant to a stipulation should insulate the order from revision to prevent a manifest injustice. While the "general rule is that stipulations entered into freely and fairly are not to be set aside," *Fairway Const. Co. v. Allstate Modernization, Inc.*, 495 F.2d 1077, 1079 (6th Cir. 1974), they are not immune from review by a district court. On the contrary, a district court may review, revise, and/or vacate a stipulation in order "to prevent a manifest injustice." *Id.*; *see also Park, supra* (granting relief from a stipulation in order to prevent a manifest injustice). Thus, the fact that the parties stipulated to the entry of the Dismissal Order does not preclude the Court from revising that order to prevent a manifest injustice.

---

[4] Correcting "clear error" and preventing "manifest injustice" are independent grounds for relief under Rule 54(b). *See Rodriguez*, 89 F. App'x at 959 (authorizing relief under the rule "to correct a clear error *or* prevent manifest injustice") (emphasis added); *Louisville/Jefferson County Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (same). For that reason, the court in *Hollis* treated these two grounds as separate bases for relief under the rule. *See Hollis*, 2014 WL 12526725, at \*2 (addressing "clear error" first and then addressing "manifest injustice" separately).

Allure next argues that leaving the Dismissal Order in place would not amount to a manifest injustice. But in support of this argument, Allure primarily relies upon cases applying a more restrictive formulation of the manifest injustice standard that does not apply here. The cases cited by Allure apply the test for manifest injustice under Rule 59(e) of the Federal Rules of Civil Procedure – which permits a court to alter or amend a final judgment. (*See* Allure Resp. to Rule 54(b) Motion, ECF #49 at Pg. ID 816-17.[5]) "[I]n the interest of finality, Rule 59(e) sets a much higher threshold for relief once judgment is entered." *Koerner v. CMR Construction & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) (contrasting standard under Rule 54(b) with standard under Rule 59(e)).[6] Thus, district courts "'have more flexibility in applying Rule 54(b)' than in determining whether reconsideration is appropriate under Rule 59(e) and 60(b)." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C.

---

[5] In the cited pages of Allure's response, Allure relies upon *Slate v. American Broadcasting Companies, Inc.*, 12 F. Supp. 3d 30, 35-36 (D.D.C. 2013) (denying motion under Rule 59(e)); *Ciralsky v. CIA*, 355 F.3d 661, 665 (D.C. Cir. 2004) (affirming denial of relief under Rule 59(e)); and *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999) (affirming denial of relief under Rule 59(e)).

[6] The Sixth Circuit has highlighted Rule 59(e)'s concern with finality in affirming a denial of relief under the rule. *See GenCorp, Inc.,* 178 F.3d at 835 (affirming denial of a motion for relief from judgment under Rule 59(e) and stressing, among other things, that "[a] decision to reopen this case would subvert the judicial imperative of bringing litigation to an end...").

2005) (quoting *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004)). Allure's reliance on cases applying the Rule 59(e) standard is therefore misplaced.

**3**

Moreover (and in any event), the Rule 59(e) manifest injustice cases cited by Allure are all easily distinguishable. In *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999), the Sixth Circuit affirmed the denial of a Rule 59(e) motion filed by a party that "in hindsight" realized that it had made "a poor strategic decision." *Id.* at 834. Here, "hindsight" has not cast doubt on any "strategic decision" made by Hewitt. Hewitt did not make a "strategic decision" to dismiss her claim against Dr. McCrary with prejudice.

Next, the Rule 59(e) motion in *Slate v. American Broadcasting Companies, Inc.*, 12 F. Supp. 3d 30 (D.D.C. 2013), did not involve any claim of attorney error nor any claim – like Hewitt's here – that the order under attack was inconsistent with an agreement reached by the parties. Instead, the motion "present[ed] a variety of overlapping contentions critical of the [court's] Opinion for misconstruing the law and the facts…." *Id.* at 37-38.[7]

---

[7] Notably the court in *Slate* stressed that "'manifest injustice' is an *exceptionally narrow concept in the context of a Rule 59(e) motion*." *Slate,* 12 F. Supp. 3d at 35 (emphasis added). The court did not apply the more liberal standard that governs Rule 54(b) motions in the D.C. Circuit. *See Cobell*, 355 F. Supp. 2d at 539 (describing Rule 54(b) standard applied in the D.C. Circuit).

Finally, in *Ciralsky v. CIA,* 355 F.3d 661 (D.C. Cir. 2004), the D.C. Circuit affirmed the denial of a Rule 59(e) motion. The plaintiff had sought relief under Rule 59(e) in the district court after that court denied his motion to amend his complaint and dismissed the complaint without prejudice. The district court refused to reconsider those rulings under Rule 59(e). On appeal, the plaintiff argued that the district court should have revisited its rulings under Rule 59(e) because the rulings caused a manifest injustice. More specifically, the plaintiff contended that the dismissal of his claims may have created a possible "statute of limitations problem" for him if he attempted to re-file his claims. *Id*. at 664. The D.C. Circuit found "nothing 'manifest' about any injustice that might result from [the] dismissal" where "the most" that the plaintiff did was "to suggest that he *may* be unfairly prejudiced" because his claims "*may*" have been time-barred following the dismissal. *Id*. at 673 (emphasis in original) (quotation omitted). Here, in sharp contrast to *Ciralsky*, the prejudice to Hewitt from the Dismissal Order is obvious and certain.

In another portion of the *Ciralsky* decision, the court held that the district court did not unreasonably deny relief under Rule 59(e) where the plaintiff waited to raise the possible statute of limitations problem until after the district court had dismissed the complaint. The court said: "We also cannot find that the district court abused its discretion in concluding that [m]anifest injustice does not exist where, as here, a party could have easily avoided the outcome but instead elected not to act until after

a final order had been entered." *Id*. (quotation omitted). Allure regards this statement as strong support for its argument that leaving the Dismissal Order intact would not cause a manifest injustice because Hewitt "could have avoided" entry of the order if only her attorney had read it before approving it. (Allure Resp. to Rule 54(b) Motion, ECF #49 at Pg. ID 817.)

But Allure ignores the very next section of the court's Opinion in *Ciralsky*. In that section, the court expressed serious concern that the attorney's error could result in the loss of plaintiff's claim. The court said: "Although we find no abuse of discretion in the district court's rulings, we are nonetheless troubled by the fact that an affirmance of its Rule 59(e) disposition would terminate this lawsuit, not because of the invalidity of Ciralsky's claims, but because the plaintiff's attorneys failed to satisfy Rule 8(a) or to advise the court of the [possible statute of limitations] consequences of a dismissal." *Id*. at 673-74. The court then remanded to allow the district court "to reconsider its Rule 59(e) decision in light of a clearer understanding of the consequences of denial." *Id*. On remand, the district court reversed course, granted relief under Rule 59(e), and allowed the plaintiff to file his amended complaint. *See Ciralsky v. C.I.A.*, 689 F. Supp. 2d 141, 147 (D.D.C. 2010) (describing procedural history).

Like the court in *Ciralsky*, this Court is troubled by the fact that if the Dismissal Order is not revised, an error by Hewitt's attorney will lead to the

termination of her claim against Allure. *Ciralsky* makes clear that this Court acts well within its discretion to revise the Dismissal Order under these circumstances.[8]

**4**

The *Hollis* decision, discussed above in Section III.D.1, is the only case cited by Allure in which a court held that an attorney error did not warrant relief under Rule 54(b)'s manifest injustice standard, but *Hollis*, too, is readily distinguishable.[9] In *Hollis*, the court granted a motion for partial summary judgment filed by the plaintiffs. The defendants then filed a motion to vacate the partial summary judgment ruling under Rule 60(b) of the Federal Rules of Civil Procedure. The

---

[8] In an earlier filing, Allure directed the Court to the decision of the Michigan Court of Appeals in *Limbach v. Oakland Cty. Bd. of Rd. Comm'rs*, 573 N.W.2d 336 (Mich. App. 1997). (*See* Allure Resp. to Rule 60(b)(1) Motion, ECF #35 at Pg. ID 579-80.) In *Limbach*, the appeals court held that the trial court did not abuse its discretion when it declined to set aside a stipulation and order for dismissal with prejudice where one party had consented to the stipulation by mistake. *Limbach* does not support Allure's position here because the Michigan Court of Appeals was applying Michigan Court Rule 2.612(C)(1) which, like Federal Rule of Civil Procedure 59(e), concerns relief from "a *final* judgment, order, or proceeding…." *Id*. at 392-93 (quoting MCR 2.612(C)(1) (emphasis added). Moreover, *Limbach* actually undermines Allure's position because the court recognized that it *could* be within a trial court's discretion to vacate a stipulated order of dismissal to which one party consented by mistake. *See id*. The court held only that it was not an abuse of discretion for the trial court to decline to vacate the order in that case.

[9] Allure cited *Hollis* for two propositions: that Rule 54(b) does not apply to orders entered by stipulation and that no manifest injustice would result from leaving the Dismissal Order intact. The Court addressed Allure's first reliance on Hollis in Section III.D.1 of this Opinion, and the Court addresses Allure's second reliance on *Hollis* in the accompanying text above.

defendants argued that the court should grant that relief because their attorney failed to file certain deposition transcripts containing evidence that, if considered by the court, would have precluded the entry of summary judgment. The defendants contended that a manifest injustice would result if the court refused to vacate its summary judgment ruling under those circumstances. The court disagreed and explained:

> In the exercise of reasonable diligence, DumpCable's counsel could have discovered his error and supplemented the record at any point during the five-week time period between the filing of Defendant's response to the motion and the Court's ruling on the motion, but he did not do so. Justice does not require this Court to expend scarce judicial resources to accommodate counsel's negligence.

*Hollis*, 2014 WL 12526725, at * 2.

Unlike in *Hollis*, revising the Dismissal Order here would not result in a waste of "scarce judicial resources." The court in *Hollis* presumably spent considerable time and energy reviewing the summary judgment filings before deciding to grant partial summary judgment. Vacating the ruling in that case would have rendered useless all of the effort that the court spent on the summary judgment issues. In contrast, this Court spent very little time entering the Dismissal Order. The Court conducted a brief review of the two-sentence order, found it to be in proper form, and signed it. Revising the Dismissal Order would thus not negate the effect of any significant work performed by the Court. Since correcting Weiner's error here

would not result in the waste of any judicial resources, *Hollis* does not counsel against revising the Dismissal Order.

## 5

For all of the reasons explained above, and in order to avoid a manifest injustice, the Court **GRANTS** Hewitt's Rule 54(b) Motion (ECF #46) to the extent that it seeks revision of the Dismissal Order so as to convert the dismissal with prejudice to one without prejudice. The Dismissal Order is **REVISED** to eliminate the "with prejudice" dismissal and replace it with a "without prejudice" dismissal.

## IV

The Court now turns to Allure's motion for summary judgment. The premise of the motion is that Allure is entitled to judgment as a matter of law based upon the dismissal with prejudice of Hewitt's claim against Dr. McCrary. (*See* Mot. for Summ. J., ECF #30 at Pg. ID 479-86.) Since the Court has revised the Dismissal Order and eliminated the "with prejudice" dismissal, Allure is not entitled to summary judgment. Accordingly, Allure's motion for summary judgment is **DENIED**.

## V

In summary, for all of the reasons explained above, **IT IS HEREBY ORDERED THAT:**

1.      Allure's motion for summary judgment (ECF #30) is **DENIED**;

2.     Hewitt's motion for relief under Rule 60(b)(1) (ECF #33) is **DENIED**;

3.     Hewitt's motion to revise or strike under Rule 54(b) (ECF #46) is **GRANTED**; and

4.     The Dismissal Order is **REVISED** to substitute a dismissal without prejudice in place of the dismissal with prejudice.  Hewitt's claims against Dr. McCrary are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 26, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 26, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764